■ MICHAEL R. LO BIONDO, Appellant, v. DONALD D'AURIA et al., Respondents.— In an action by a vendee for specific performance of a contract for the sale of real property against the vendor and a subsequent purchaser, plaintiff appeals from a judgment of the Supreme Court, Suffolk County, dated January

7, 1974, in favor of defendants, after a nonjury trial. Judgment reversed, on the law and the facts and as a matter of discretion, with costs, specific performance of the contract directed as demanded in the complaint and case remanded to Special Term for further proceedings not inconsistent herewith. On September 25, 1970 the vendee and vendor entered into a contract under which the vendor agreed to sell to the vendee certain premises in the Town of Brookhaven for $55,000. The vendee made no down payment, but entered into possession of the premises as a vendee in possession paying a stipulated rental. He thereafter expended a substantial sum of money in repairing the property and also retained an attorney to effect a zoning change. The contract was conditioned upon the vendee's obtaining a zone change at his own expense and also obtaining the necessary financing. In essence, the zoning clause provided that the vendee, at his own cost, obtain " necessary *approval,* permits or rezoning for the use of the premises as a boarding house and adult proprietory home " (emphasis supplied). He was to have until September 1, 1971 to obtain such *approval,* permits or rezoning. He had the option of cancelling the contract in the event he could not obtain the necessary *approval.* The contract was further conditioned upon the ability of the vendee to obtain a conventional mortgage of $30,000 for 15 years, at prevailing interest. The mortgage commitment clause expressly provided: " In the event a commitment for such loan is not obtained from a lending institution within sixty (60) days from the date that *final zoning approval* is obtained by the Contract Vendee, then this Contract shall immediately become null and void unless this time is extended by the parties by written agreement " (emphasis added). Title closing was scheduled for October 1, 1971. On October 27, 1971, at the vendee's request, the time was extended to December 31, 1971. On December 21, 1971, the Town Board conditionally granted the vendee's application for a zoning change. On December 22, 1971 the Town Clerk sent a notice to the vendee's attorney advising that the application for a change of zone had been granted, subject to the conditions that the " applicant " is required to dedicate to the Town of Brookhaven a five-foot widening strip along Warren Avenue and to submit the deed, an updated survey and a certificate of title insurance to the town " before this zoning can become effective ". On February 22, 1972 the vendee's attorney sent a letter to the vendor's attorney confirming a conversation of February 18, 1972 and stating that it was anticipated that the closing would take place at the lending institution on or about April 7, 1972, the exact time and place to be fixed in the immediate future. On February 23, 1972, by letter apparently crossing in the mail, the vendor's attorney advised the vendee's attorney, in substance, that since the Town Board had " granted approval " of the nursing home on December 21, 1971, and since the vendee had not informed the vendor that he had obtained a mortgage commitment within 60 days after the rezoning approval, the vendor elected to exercise his option to declare the contract null and void. On March 16, 1972, the vendee's attorney mailed the vendor's attorney a proposed deed to the five-foot strip for execution by the vendor. The latter attorney did not return the executed deed, but responded that the contract had been declared null and void. On May 12, 1972 the Town Clerk advised the vendee by a second letter that, since the conditions of the zoning approval which had been granted on December 21, 1971 had been complied with, and publication and posting had been completed, " the effective date of the change of zone is May 22nd, 1972 ". It appears that the property was conveyed to the codefendant, Royal Inn, Ltd., sometime in May, 1972 at a price of $60,000, of which $30,000 was paid in cash. The balance of the price was given to the vendor in the form of a 50% stock interest in the corporate purchaser. There is testimony by the vendor's attorney that the vendor eventu-

ally executed the deed conveying the required five-foot strip to the town and submitted a certificate of title to the town to preserve the zoning change, as D'Auria did not wish the property to revert to residential zoning. A builder-realtor testified in the vendee's behalf at the trial that he met the vendee in December, 1971 and then entered into a joint venture with the vendee and another associate to purchase the subject property, that he was financially able to consummate the deal with the vendor and that he had a standby commitment from a lending institution for personal financing, if necessary. It further appeared that sometime in February, 1972 the vendee and vendor negotiated a " different deal " and eventually agreed on a partnership in both the subject land and nursing home. However, this deal fell through because the vendee said he had a group of doctors interested in the purchase. The vendor's attorney testified that at no time had the vendee or his attorney ever told him anything regarding finances other than that money was available — but no proof whatsoever was shown to him. We find that the vendee did sustain his burden of proof that he had been ready, willing and able to consummate the contract with the vendor and that he had performed all of the conditions of the contract relating to time limitations for zoning and financing. We note the disparity in the language employed by the vendor, the drafter of the contract, in the respective zoning and financing clauses. The zoning clause provided for obtaining " approval " of the rezoning. The mortgage commitment clause, on the other hand, provided for obtaining the mortgage commitment within 60 days " from the date that final zoning approval is obtained by the Contract Vendee ". Any ambiguity, of course, in the language used must be resolved against the seller, the drafter of the contract. We believe the disparity in language to be significant. In this context, we find it was the intention of the parties, reading the clauses together, to trigger the 60-day mortgage commitment period from the date of " final zoning approval " on May 22, 1972, rather than the date of the conditional zoning " approval " on December 21, 1971. Prudence would dictate that the application for a mortgage commitment be deferred until the vendee would be certain that he had " final " zoning approval, not " conditional " zoning approval. We find that the vendee did comply within the extended time limit provided in the zoning clause (December 31, 1971) by obtaining conditional " approval " of the zone change on December 21, 1971. He acted in good faith in pursuing the zoning application resulting in obtaining the *approval* of the zone change. The conditions imposed by the Town Board, which deferred *final zoning approval*, were not within the vendee's control. Under these circumstances, when the vendor attempted to cancel the contract by letter of February 23, 1972, the vendee's rights under the contract were still viable and could not be terminated. Since the vendor had canceled the contract, there was no necessity for the vendee to tender performance, as a vain act is not required (*Royce* v. *Rymkevitch*, 29 A D 2d 1029). Ordinarily, specific performance of a contract for the sale of real property may only be decreed where it is possible for the vendor to convey the land (*Saperstein* v. *Mechanics & Farmers Sav. Bank of Albany*, 228 N. Y. 257, 260; *Maurer* v. *Albany Sand & Supply Co.*, 40 A D 2d 883). At bar, however, the subsequent purchaser, codefendant Royal Inn, Ltd., has no rights as a bona fide purchaser, without notice, since, together with the vendor, it bought with knowledge of the vendee's contract (*Maurer* v. *Albany Sand & Supply Co.*, supra; *Northern Operating Corp.* v. *Anopol*, 25 A D 2d 551; *Spuches* v. *Royal View*, 13 A D 2d 815, 816). Hopkins, Acting P. J., Latham, Shapiro, Brennan and Munder, JJ., concur.